UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYNTHIA WALKER, et al.,

Plaintiffs,

v.

METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY,

Defendant.

CASE NO. C12-0173JLR

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Before the court is Defendant Metropolitan Property & Casualty Insurance Company's ("MetLife") motion for summary judgment against Plaintiffs Cynthia Walker ("Ms. Walker"), William Walker, and Debra Walker. (Mot. (Dkt. # 34).) The court has considered the motions, all submissions filed in support and opposition thereto, the balance of the record, and the applicable law. Having heard oral argument on Monday,

March 4, 2013, and considering itself fully advised, the court GRANTS MetLife's motion for summary judgment (Dkt. # 34).

## II. BACKGROUND

This case is a dispute between Plaintiffs and their insurer, MetLife over whether MetLife complied with its contractual and statutory obligations.[1] Ms. Walker and her two adult children, William Walker and Debra Walker, live at 900 25th Ave South, Seattle, Washington. (Am. Compl. (Dkt. # 9) ¶ 1.2-1.3; Robinson Decl. (Dkt. # 36) Ex. D ("Walker Dep.") at 39.[2]) MetLife issued a homeowner's insurance policy to Ms. Walker that was in effect on April 29, 2008. (Watkins Decl. (Dkt. # 38) at 18, ¶ 3.)

---

[1] MetLife provided the court with sloppy citations to the factual record. The court counts at least 15 factual assertions in MetLife's brief that were either not supported by the cited portion of the record or were supported by citations to evidence that is not in the record. For example, at page 2, lines 22-23 of MetLife's motion for summary judgment, MetLife asserts that "[t]he fire caused mostly smoke damage to the dwelling and contents," citing to page 24 of the deposition of Cynthia Walker. (Mot. at 2.) Page 24 of the deposition of Cynthia Walker contains no information whatsoever regarding the type of damage caused by the fire. As another example, at page 3, line 15 of MetLife's motion for summary judgment, MetLife cites to page 63 of the deposition of James Lawson. (*Id.* at 3.) Page 63 of the deposition of James Lawson, however, is not present in the record. The court will not scour the record in an attempt to locate facts supporting the parties' arguments. *See Moritz v. Gordon*, --- F. Supp. 2d ----, 2012 WL 3985823, at 9 n.7 (W.D. Wash. Sept. 11, 2012); *see also Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("Judges are not like pigs, hunting for truffles buried in briefs." (citations omitted)). The inaccurately cited factual assertions, however, do not affect the disposition of this motion.

[2] The court's citations refer to page numbers in the record, rather than to a document's original pagination. For example, "(Walker Dep. at 39)" indicates that the reader can find the cited material at page 39 of the cited docket entry, rather than at the page of the Walker deposition originally labeled as page 39.

On April 29, 2008, a kitchen fire occurred at the Walker residence while William Walker was cooking. (Walker Dep. at 41.) The fire caused property damage to the Walkers' home and to the Walkers' personal property. (Am. Compl. ¶ 3.2.)

The insurance policy held by Ms. Walker covers damage due to fire and smoke. (Lawson Decl. (Dkt. # 35) Ex. B ("Insurance Policy") at 55.) Under the policy, MetLife was obligated to pay Ms. Walker the actual cash value ("ACV") of damaged or destroyed property unless Ms. Walker replaced or repaired the property within 180 days, in which case MetLife had the duty to pay the full cost of replacement or repair:

> **B. Replacement Costs on Contents**
> If **you** repair or replace the damaged or destroyed property, **we** will pay the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation.
>
> * * *
>
> 3. If **you** decide not to repair, restore or replace the damaged or stolen property, settlement will be on an **actual cash value** basis. **You** may make any claim within 180 days after the date of **actual cash value** payment for any additional payment on a replacement cost basis if **you** repair, restore or replace the damaged or stolen property.

(*Id.* at 64 (emphasis in original).) The Walkers did not make any claims for ACV reimbursement for repairing or replacing damaged items. Additionally, under the policy, it was Ms. Walker's duty to prepare an inventory of the damaged property:

> **2. What You Must Do After a Loss. We** have no obligation to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties.
>
> *** * ***

> D. Prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, **actual cash value** and amount of loss claimed for each item. Attach to the inventory all bills and other documents that substantiate the figures in the inventory.

(*Id.* at 77 (emphasis in original).)

Following the fire, James Lawson, an adjuster for MetLife, met with Ms. Walker and William Walker and performed a walkthrough of the residence. (Walker Dep. at 42.) After meeting with Mr. Lawson, Ms. Walker walked outside, where a representative of Allwest Adjusters, Inc. ("Allwest") introduced himself to her.[3] (*Id.* at 48-49.) Ms. Walker hired Allwest to represent her as a Public Adjuster. (*Id.* at 52.) On May 5, 2008, Bud Dyer of Allwest notified MetLife via letter that he was representing the Walkers in the claims process. (Watkins Decl. Ex. 1 at 39.) In that same letter, Mr. Dyer requested that MetLife send a certified copy of the insurance policy. (*Id.*) There is no evidence that MetLife complied with the request prior to March 14, 2011, when they did so. (Lawson Decl. Ex. B ("Insurance Policy Certification") at 39.)

Mr. Dyer hired Earl Vanderhoof, a contents specialist, to prepare an inventory of the Walkers' contents. (Dyer Decl. at 34.) Mr. Vanderhoof was the only employee of a company named Contents Northwest, which worked exclusively for Allwest. (Robinson Decl. Ex. F ("Vanderhoof Dep.") at 92.) Allwest instructed Mr. Vanderhoof to inventory everything in the Walker residence. (*Id.* at 93.) Mr. Vanderhoof went through the whole

---

[3] At her deposition, Ms. Walker stated that after meeting with Mr. Lawson, she walked outside of her house and was standing in her yard when a representative of Allwest drove by and introduced himself. (Walker Dep. at 48.)

house, taking general pictures of each room as well as of every item valued over $10, and described every item into a voice recorder. (*Id.* at 79). Afterward, Mr. Vanderhoof entered the items into a spreadsheet to create a contents inventory list. (*Id.* at 81.)

Mr. Dyer faxed Mr. Vanderhoof's inventory list to MetLife on September 17, 2008. (Robinson Decl. Ex. A ("Vanderhoof Inventory List") at 5.) The contents of this inventory had a retail cost value ("RCV") of $99,077.37 and an ACV of $83,153.96. (*Id.* at 31.) All items in the inventory were listed as being between zero and five years old. (Vanderhoof Dep. at 87-89.) The age of an item determines its depreciation value, which determines how much less an item's ACV is than its RCV. (*Id.*)

Mr. Vanderhoof recorded the ages of items based on representations from the Walkers as to their age. According to Mr. Vanderhoof, it was not his job to independently determine the correct ages. (*Id.* at 85.) Instead, he says, it was the adjuster's responsibility to verify the ages. (*Id.*) Mr. Vanderhoof suspected that it was highly unlikely that no item in the Walker residence was in fact older than five years. (*Id.* at 86.) He reported his suspicions about the inaccurate ages to Mr. Dyer. (*Id.* at 85.)

For his part, Mr. Dyer disclaimed responsibility for verifying the ages of the items: "[w]hen you bring in a professional inventory person and they're dealing directly with the insured, I'm expecting [the inventory list] to be a finalized thing when I send it off." (Robinson Decl. Ex. G ("Dyer Dep.") at 103.) Mr. Dyer stated that while he did not pay attention to the reported ages of the items on the inventory, he agrees that it "would be almost impossible" for all the items to be no older than five years. (*Id.*) Additionally,

Ms. Walker herself admitted that some of the items were in fact older than five years, despite what she had reported to Mr. Vanderhoof. (Walker Dep. at 56.)

Sometime after Mr. Vanderhoof created his inventory list, all the inventoried contents were moved from the Walker residence into storage. (*Id.* at 61.) MetLife hired a contractor, Enservio, Inc. ("Enservio"), to inventory the contents. (Robinson Decl. Ex. E ("Lawson Dep.") at 71; Lawson Decl. Ex. A ("Enservio Inventory List").) Based on this inventory list, Enservio calculated an RCV of $71,089.77 and an ACV of $47,849.59. (Enservio Inventory List at 37.)

MetLife has paid the Walkers $55,000 for contents claims in two installments. (Walker Dep. at 60; Robinson Decl. Ex. I at 142.) The first installment was a $5,000 advance, and the second payment was a $50,000 advance. (*Id.*; Lawson Dep. at 69.)

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine

dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658.

**B. Statute of Limitations**

MetLife argues that the Walkers' claims for bad faith and for violation of the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015, are time-barred by the statute of limitations. (*See* Mot. at 13-14.) In their opposition brief, the Walkers provide four grounds for MetLife's liability for bad faith. As explained below (*supra* § III.B.1), two of the four grounds fail because the Walkers did not bring the claims within the statute of limitations. As further explained below (*supra* § III.E.1), with respect to all four grounds for liability, the Walkers fail to present any evidence of the damages element of a bad faith claim. The court first analyzes the Walkers' four grounds for liability for bad faith under the statute of limitations.

**1. Bad Faith**

"An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 503 (Wash. 1992). Under RCW 4.16.080(2), the applicable statute of limitations for such a tort is three years. Because the Walkers filed their complaint on January 5, 2012 (*see* Not. of Removal (Dkt. # 1) Ex. 1 (State Court Compl.) at 6), all allegations of bad faith must have occurred on or prior to January 5, 2009, to fall within the statute of limitations. The Walkers argue that although the statute of limitations for their bad faith claim is three years, MetLife continued to act in bad faith from the time of the accident until November, 2009. (Resp. at 9.) As a result, they argue that their bad faith claim was filed within the statute of limitations. (*Id.*) Although

MetLife did correspond with the Walkers on November 19, 2009 (Dyer Decl. Ex. 7 at 54-55), the Walkers do not present any arguments that the November 19 communication constituted bad faith. Instead, the Walkers provide four specific grounds for MetLife's liability for bad faith:

(1) The Walkers argue that MetLife failed to complete its investigation of the Walkers' claim within the 30 days required by WAC 284-30-370. (*See* Resp. at 11-12.) Although the record does not state the date that the Walkers made their insurance claim, at oral argument both parties stipulated that the claim was made on April 30, 2008. Assuming the truth of the allegation by viewing it in the light most favorable to the Walkers, a claim for bad faith for MetLife's failure to comply with this WAC accrued on May 30, 2008, 30 days after the insurance claim was first made, and the point at which the Walkers had a right to apply to court for relief.[4] *See Moratti ex rel. Tarutis v. Farmers Ins. Co. of Wash.*, 254 P.3d 939, 942 (Wash. Ct. App. 2011) ("[a] cause of action generally accrues for purposes of the commencement of the statute of limitation when a party has a right to apply to court for relief.") (quoting *Bush v. Safeco Ins. Co. of*

---

[4] Although Washington recognizes a continuing tort doctrine, no court has applied that doctrine to the statute of limitations for a bad faith claim. *See Lenk v. Life Ins. Co. of N. Am.*, No. CV-10-5018-LRS, 2010 WL 5173207, at *3 (E.D. Wash. Dec. 13, 2010) (rejecting Plaintiff's argument that continuing tort doctrine applied to bad faith claim). The court concludes that applying the continuing tort doctrine would be illogical here because it would defeat the purpose of the statute of limitations. 30 days after making their insurance claim, it would have been clear to the Walkers that MetLife had not completed its investigation within the timeframe required by WAC 284-30-370. At that point, the Walkers were free to bring a bad faith claim. Instead, the Walkers opted to wait more than three years from discovering the alleged violation to bring their bad faith claim. Moreover, as discussed below (*supra* § III.E.1), even if the statute of limitations did not bar the Walkers' bad faith claim, the claim fails on the merits.

*Am.*, 596 P.2d 1357, 1358 (Wash. Ct. App. 1979)). Because January 5, 2012, is more than three years past that date, the Walkers' claim for bad faith for a violation of WAC 284-30-370 is time-barred by the statute of limitations. *See* RCW 4.16.080(2).

(2) The Walkers argue that MetLife failed to respond promptly to pertinent communications in contravention of WACs 284-360(3) and -380(1). (*See* Resp. at 13.) Assuming the truth of the allegations by viewing them in the light most favorable to the Walkers, a claim for bad faith for MetLife's failures to respond promptly to pertinent communications accrued no later than September 16, 2008. Under the pertinent regulations, MetLife was required to respond to the Walkers' Proof of Loss within 10 working days of receiving it. *See* WAC 284-30-360(3). A separate regulation required MetLife to notify the Walkers whether their claim had been accepted or denied within 15 working days of receiving the Walkers' Proof of Loss. *See* WAC 284-30-380(1). The Walkers submitted their proof of loss on August 24, 2008. (Dyer Decl. Ex. 2 at 41.) Ten working days from August 24, 2008 was September 5, 2008, and fifteen working days from August 24, 2008 was September 12, 2008. Because January 5, 2012, is more than three years past those dates, the Walkers' claim for bad faith for violations of WACs 284-30-360(3) and -380(3) is time-barred by the statute of limitations. *See* RCW 4.16.080(2).

(3) The Walkers argue that MetLife compelled the Walkers to initiate litigation. (*See* Resp. at 12.) WAC 284-30-330(7) states that an insurance company may not "[c]ompel[] a first party claimant to initiate or submit to litigation . . . to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." WAC 284-30-330(7). As

explained below (*supra* § III.E), the court has determined that MetLife offered, and in fact gave, the Walkers more than they can prove they were actually entitled to under the insurance policy. Thus, the Walkers will not ultimately recover amounts in this litigation greater than the amounts offered by MetLife, and so the Walkers' claim for bad faith for a violation of WAC 284-30-330(7) fails. *See* WAC 284-30-330(7).

(4) The Walkers argue that MetLife inaccurately determined the contents' ACV in contravention of WAC 284-30-380(7). (*See* Resp. at 12.) Assuming the truth of the allegation by viewing it in the light most favorable to the Walkers, a claim for bad faith for MetLife's failure to accurately determine the contents' ACV would have accrued on the date that MetLife adopted the Enservio Inventory List—the only date that MetLife produced *any* contents' ACV that might qualify as an inaccurate evaluation under WAC 284-30-380(7). The court, however, is unable to locate this date in the record. Because MetLife does not support their statute of limitations argument as to this WAC with the types of evidence required by Federal Rule of Civil Procedure 56(c), they do not meet their burden. *See* Fed. R. Civ. P. 56(c). Thus, for the purposes of this motion, the court finds that the Walkers' claim for bad faith under WAC 284-30-380(7) is not time-barred by the statute of limitations. Nevertheless, as explained below (*supra* § III.E.1), however, because the Walkers fail to present any evidence regarding the damages element of a bad faith claim, the court ultimately grants summary judgment to MetLife as to the Walkers' claim for bad faith for a violation of WAC 284-30-380(7). *See* RCW 4.16.080(2).

//

**2. IFCA**

The statute of limitations for IFCA actions is determined by RCW 4.16.080(2), which provides a three-year statute of limitations for "action[s] for . . . any other injury to the person or rights of another not hereinafter enumerated." RCW 4.16.080(2). The precipitating event of an IFCA action is when the insurer extends its allegedly unreasonable settlement offer. *See Haley v. Allstate Ins. Co.*, No. C09-1494RSM, 2010 WL 4052935, at *7 (W.D. Wash. Oct. 13, 2010). This occurred on October 28, 2008, the date that Mr. Lawson rejected the Walkers' inventory list. (*See* Dyer Decl. (Dkt. # 38) Ex. 3 at 43 (Mr. Lawson emailed Mr. Dyer that "I also rejected your submission of the contents inventory. . . .").) Thus, without any tolling, the statute of limitations would run on October 28, 2011.

For IFCA actions, however, the statute of limitations is tolled when an insured provides written notice of a claim to the insurer and the Washington Insurance Commissioner. RCW 48.30.015(8)(d). The Walkers sent written notice on July 28, 2011. (*See* Watkins Decl. (Dkt. # 38) Ex. No. 2 at 29-31.) The Walkers argue that, by virtue of their sending written notice to MetLife, the statute of limitations was tolled at that date, safely within three years of October 28, 2008. (*See* Resp. at 10.) MetLife argues that written notice tolls the statute of limitations only for 20 days, not indefinitely. (*See* MetLife Reply (Dkt. # 40) at 6.) The court agrees with MetLife. The statute states that "[i]f a written notice of claim is served under (a) of this subsection within the time prescribed for the filing of an action under this section, the statute of limitations for the action is tolled *during* the twenty-day period of time in (a) of this subsection." RCW

48.30.015(8)(d) (emphasis added). When the plain language of a statute is clear and unambiguous, the judicial inquiry into the statute's meaning is complete. *See Campbell v. Allied Van Lines, Inc.*, 410 F.3d 618, 622 (9th Cir. 2005). Because the Walkers' written notice only tolled the statute of limitations for 20 days, their January 5, 2012, claim under the IFCA falls outside the statute of limitations, and is time-barred. *See* RCW 48.30.015(8)(d); RCW 4.16.080(2).

**C. Insurance Policy**

Ms. Walker's insurance policy is clear: she is entitled to the ACV of the damaged or destroyed property unless she repairs, restores, or replaces the property and submits a claim to MetLife for the RCV of the items within 180 days of the repair, restoration, or replacement. (Insurance Policy at 64 (reproduced *supra* § II).) MetLife asserts that the Walkers failed to make any RCV claim. (Mot. at 12-13; *see* Watkins Decl. Ex. 10 at 64.) Because the Walkers do not refute that they failed to make any RCV claim, the court considers that fact undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."). As a result, the court finds that, as a matter of law, the Walkers are not entitled to the RCV of their property.

**D. Competing Inventory Lists**

The parties present the court with two competing inventory lists that each provide a different RCV and ACV. (*See* Vanderhoof Inventory List; Enservio Inventory List.) The Walkers assert that the Vanderhoof Inventory List provides the proper measure of

what MetLife owes them. (*See* Dyer Decl. Ex. 2 at 41.) MetLife, on the other hand, argues that the Vanderhoof Inventory List is fatally flawed and so is inadmissible and irrelevant. (Mot. at 2.) Instead, they argue, the court should use the Enservio Inventory List to determine what MetLife rightfully owes the Walkers. (*Id.* at 6.)

MetLife argues that the Vanderhoof Inventory List is inaccurate because the ages of the items are incorrect. (Mot. at 6-8.) Even viewing the evidence in the light most favorable to the Walkers, the court agrees with MetLife that the Vanderhoof Inventory List is inaccurate and will not use it to determine the ACV MetLife owes to the Walkers. In depositions, Ms. Walker, Mr. Vanderhoof, and Mr. Dyer all admit that the items were inaccurately aged. (Walker Dep. at 56; Vanderhoof Dep. at 86; Dyer Dep. at 103.) Under the insurance policy, it was Ms. Walker's duty to provide the age of each item. (Insurance Policy at 77.) Because ACV is determined by calculating age-based depreciation, inaccurate ages necessarily result in an inaccurate ACV calculation. (*See* Vanderhoof Dep. at 87-89.) Despite an opportunity to do so, there is no evidence in the record that Ms. Walker ever remedied her mistakes by later providing accurate ages for the items. Thus, although the Vanderhoof Inventory List is flawed, the court has no way of knowing how to adjust or account for the errors contained therein. For these reasons, the court will not use the Vanderhoof Inventory List as a basis for ACV.

MetLife hired Enservio to create a second inventory list. (Lawson Dep. at 71; Enservio Inventory List.) MetLife argues that the court should use the Enservio Inventory List to determine the proper ACV that MetLife owes to the Walkers. (Mot. at 15.) In response, the entirety of the Walkers' argument made in their opposition brief is

that "[a]ssuming, as this Court must for the purposes of this [m]otion, that Dyer and the Walkers are correct, [MetLife] failed to determine and pay the appropriate ACV on the contents claim." (Resp. at 12.) This mere legal conclusion, unsupported by facts, fails to "properly address another party's assertion of fact as required by Rule 56(c)." Fed. R. Civ. P. 56(e). At oral argument, the Walkers made arguments contesting the Enservio Inventory List. However, their arguments were not made in their opposition brief, and were not supported by evidence in the record. Such arguments do not raise a genuine issue of material fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.").[5]

Additionally, the Walkers filed a supplemental declaration on March 1, 2013, which contained more information regarding the Enservio Inventory List. (Hanson Decl. (Dkt. # 48).) This declaration was untimely by more than a month under Local Rule 7, which requires that a party opposing a summary judgment motion must file any supporting materials by the Monday before the noting date. *See* Local Rules W.D. Wash. CR 7(b)(2), 7(d)(3). Because the motion for summary judgment was noted for Friday,

---

[5] MetLife admitted at oral argument that the Enservio Inventory List suffers from the same shortcoming as the Vanderhoof Inventory List, because the former list used the latter's reported ages to depreciate the contents and create its ACV. This flaw, however, serves only to artificially increase, rather than decrease, the final ACV, because the inaccurate ages created artificially low depreciation figures. (*See* Vanderhoof Dep. at 87-89.) As a result, the Enservio Inventory List's flaw casts its accuracy into doubt, but only in a way that benefits MetLife: if the Enservio Inventory List used accurate ages, the ACV would decrease.

February 1, 2013, the Walkers were required to file their supporting papers by Monday, January 25, 2013. *See id.* Because of the unexcused tardiness of the supplemental declaration, the court STRIKES the supplemental declaration (Dkt. # 48) and will not consider its contents in deciding this motion.[6] For these reasons, the court considers the accuracy of the Enservio Inventory List undisputed for purposes of the motion.

By credibly refuting the Vanderhoof Inventory List and introducing the Enservio Inventory List, MetLife has met its initial burden of showing that there is no genuine issue of material fact regarding the ACV. *See Celotex*, 477 U.S. at 323. Because MetLife meets its burden as the moving party, the Walkers' failure to establish a genuine dispute of material fact as to the contents' ACV means that they cannot establish "the existence of [an] essential element[] of [the] case"—damages. *Galen*, 477 F.3d at 658.

**E. The Walkers' Bad Faith, CPA, and IFCA Claims**

It is undisputed that MetLife has already paid the Walkers $55,000 for their contents claim. (Walker Dep. at 60; Robinson Decl. Ex. I at 142.) Because the court

---

[6] Even were the court to consider the supplemental declaration, the Walkers would not benefit. The supplemental declaration merely identifies a list of items found in the Vanderhoof Inventory List but not found in the Enservio Inventory List. (*See generally* Hanson Decl.) The supplemental declaration does not raise a genuine issue of material fact, however, regarding whether the Enservio Inventory List contains the Walkers' entire damaged contents. According to Ms. Walker, all the damaged items were moved into a storage facility over which the Walkers had complete control. (*See* Walker Dep. at 61.) Moreover, it is undisputed that the Enservio Inventory List was created by inventorying every item in the storage facility. Despite having the ability to do so, the Walkers produced no evidence indicating that the Enservio Inventory List was not an accurate inventory of every item in storage. Assuming, *arguendo*, that the Enservio Inventory List differed from the contents at the storage facility, the Walkers could have gone to the facility and demonstrated that the Enservio Inventory List did not match the contents held at the storage facility. Thus, the Walkers fail to raise a genuine issue of material fact contesting that the Enservio Inventory List is an accurate accounting of the Walkers' damaged contents.

finds that ACV and not RCV is the proper measure of what MetLife owes the Walkers, and because the court finds that the Walkers have not presented any evidence that MetLife underpaid the contents claim, the court finds that the Walkers have failed to raise genuine issues of material fact suggesting that they have suffered damages, an injury, or an unreasonable denial of coverage or payment of benefits.

**1. Bad Faith**

The Washington Insurance Commissioner has promulgated regulations that define specific acts that constitute bad faith on the part of an insurer. *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 17 P.3d 1229, 1234 (Wash. Ct. App. 2001); *see* WAC 284-30-300 to -800. Any violation of these regulations constitutes a breach of the duty of good faith an insurer owes to an insured. *Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 105 P.3d 1012, 1019 (Wash. Ct. App. 2005). The elements of bad faith are "duty, breach of that duty, and damages proximately caused by any breach of duty." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). The Walkers have not presented any evidence that MetLife underpaid the contents claim, or of any other damages. Because the Walkers fail to show damages, the court declines to decide whether MetLife violated the relevant WACs and breached the duty of good faith. Without a showing of damages, the court must as a matter of law GRANT summary judgment as to the Walkers' claim for bad faith.

**2. CPA**

The elements for a CPA action are "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d

34 (Wash. 2012). The only element relevant to this motion is whether the Walkers suffered an injury compensable under the CPA. Emotional damages and the costs of litigation are not compensable injuries under the CPA. *See Ledcore Indus., Inc. v. Mut. of Enumclaw Ins. Co.*, 206 P.3d 1255, 1262 (Wash. Ct. App. 2009); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 720 (Wash. Ct. App. 1992).

The Walkers' CPA claim is predicated on the argument that they sustained injury as a result of MetLife delaying payment of the unpaid funds that the Walkers seek in this litigation. (Resp. at 14.) Because the Walkers produced no evidence suggesting that they were underpaid by MetLife, the court finds that the Walkers suffered no injury compensable under the CPA. Without a showing of injury, the court must as a matter of law GRANT summary judgment as to the Walkers' CPA claim.

**3. IFCA**

A successful claim under the IFCA requires that an insurer "unreasonably denied a claim for coverage or payment of benefits." RCW 48.30.015(1). Without an unreasonable denial of coverage or payment of benefits, an insured cannot prevail in an IFCA action. *See, e.g.*, *Davis v. Am. States Ins. Co.*, No. C10-1605JCC, 2012 WL 2004866, at *5 (W.D. Wash. June 5, 2012). The court has found that the Vanderhoof Inventory List is inaccurate. Because the court has found that the Walkers produced no evidence suggesting that they were underpaid by MetLife, the court cannot say that MetLife unreasonably denied payment of benefits to the Walkers. Thus, the court finds that MetLife did not act unreasonably when it refused to pay the Walkers the ACV provided by the Vanderhoof Inventory List. Because the court finds that MetLife did not

unreasonably deny coverage or payment of benefits, the court GRANTS summary judgment as to the Walker's IFCA claim.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS MetLife's motion for summary judgment and enters summary judgment in favor of MetLife on all claims before the court (Dkt. # 34),[7] and STRIKES the Hanson Declaration (Dkt. # 48). Having granted summary judgment, the court STRIKES AS MOOT MetLife's motion to exclude testimony (Dkt. # 32) and the parties' motions in limine (Dkt. ## 43, 45, and 46).

Dated this 8th day of March, 2013.

JAMES L. ROBART
United States District Judge

[7] At oral argument, MetLife stipulated that should the court dismiss the Walkers' claims, MetLife will not seek repayment for any amount MetLife overpaid to the Walkers. The court will hold MetLife to this promise.